**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **SOUTHERN MOTION, INC.** | ) | **CASE NO. 26-13155-JDW** |
| | ) | |
| **Debtor.** | ) | **CHAPTER 11** |
| | ) | |

**EMERGENCY MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE INSURANCE PROGRAMS, INCLUDING MAINTENANCE OF INSURANCE POLICIES, AND (B) PAY ALL OBLIGATIONS WITH RESPECT THERETO; AND (II) GRANTING RELATED RELIEF**

Southern Motion, Inc. ("Southern Motion") or "Debtor"), by and through undersigned counsel, files this *Emergency Motion for Entry of Order (I) Authorizing the Debtor to (A) Continue Insurance Programs, Including Maintenance of Insurance Policies, and (B) Pay All Obligations with Respect Thereto; and (II) Granting Related Relief* (the "Motion"). In support of the Motion, the Debtor states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and other applicable sections of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) (the "Bankruptcy Code"). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The bases for the relief requested herein are §§ 105, 363, and 503(b) of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

3. On August 31, 2026 (the "Petition Date"), the Debtor filed its voluntary petition for relief and thereby commenced this bankruptcy case (the "Chapter 11 Case") under chapter 11 of

the Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Mississippi (the "Court"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor is operating its business and managing property as a debtor-in-possession. No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case, and no committees have been appointed or designated.

4. Southern Motion is a Mississippi corporation with its principal place of business located at 298 Henry Southern Drive, Pontotoc, Mississippi 38863. Southern Motion is a wholly owned subsidiary of Gainline Recline Intermediate Corp. Southern Motion is a producer and manufacturer of sofas, sectionals, recliners. Southern Motion's facilities are located in Pontotoc County, Mississippi and Lee County, Mississippi. A full description of the Debtor's business, its reasons for commencing this Chapter 11 Case, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in that certain Declaration of David Baker, Managing Partner at Aurora Management Partners, Inc. as Chief Restructuring Officer of Southern Motion (the "First-Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## RELIEF REQUESTED

5. Southern Motion requests entry of an order, substantially in the form attached hereto as **Exhibit A**: (i) authorizing, but not directing, Southern Motion to (a) maintain, renew, amend, supplement, replace, purchase, or extend, in its discretion, the Insurance Policies (defined below) in accordance with their applicable terms and to perform with respect thereto in the ordinary course of business, and (b) pay, in their discretion, any premiums, deductibles, self-insured retentions, compensation claims, or other obligations arising under or related to the Insurance Policies (collectively, the "Insurance Obligations"); and (ii) granting related relief.

## INSURANCE POLICIES AND RELATED OBLIGATIONS

6. In the ordinary course of business, Southern Motion maintains several policies (collectively, the "Insurance Policies"), that are issued by various insurers (collectively, the "Insurers"). The Insurance Policies provide coverage for, among other things, property, general liability, worker's compensation, excess liability, employment practices liability, and crime protection. As of the Petition Date, the current premiums for Southern Motion's Insurance policies total $2,141,343.00.

7. A detailed list of the Insurance Policies and the Insurers under such policies is attached hereto as **Exhibit B**. Southern Motion believes that the coverage provided through the Insurance Policies is appropriate in scope and amount for similarly sized businesses within the furniture industry. Southern Motion owes approximately $41,000.00 in premiums under the Insurance Policies as of the Petition Date. Through this Motion, Southern Motion is seeking approval to pay any premiums for its Insurance Policies that may be due and owing as of the Petition Date.

## BASIS FOR RELIEF

### I. Southern Motion Should Be Authorized to Maintain the Insurance Policies

8. Maintaining the Insurance Policies, on an ongoing and uninterrupted basis, is essential to the continued operation of Southern Motion's business, and in many instances, is required under the laws, regulations, and contracts that govern Southern Motion's business operations. Further, under § 1112(b)(4)(C) of the Bankruptcy code, a "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for a mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(c).

9. Southern Motion believes that the ordinary course maintenance of the Insurance Policies, including paying all of the Insurance Obligations, whether arising pre-petition or post-petition, satisfying all post-petition commitments to the Insurers, and otherwise maintaining the Insurance Programs without further order of the Court, is necessary and essential for Southern Motion to achieve its objectives in the Chapter 11 Case, especially, where, as here, the Insurers may seek to terminate the existing Insurance Policies or decline to renew such Insurance Policies in the future if Southern Motion fails to pay the Insurance Obligations. Southern Motion would then be required to obtain replacement policies on an expedited basis, likely at a significantly increased cost to the estate. Moreover, Southern Motion could be exposed to substantial liability for damages resulting to persons and/or property absent insurance coverage, and such exposure could have an extremely negative impact on Southern Motion's ability to successfully reorganize.

10. Southern Motion is legally and contractually required to maintain certain Insurance Polies, including under state laws requiring it to maintain workers' compensation policies for its employees. Southern Motion could be fined a substantial amount by various state entities if certain insurance policies are not maintained. Further, without sufficient workers' compensation coverage, there is a significant risk that employees will not receive timely payments for employment related injuries, which could also have a detrimental effect on the financial well-being and morale of Southern Motion's employees. Departures by employees at this critical time could result in a severe disruption of Southern Motion's business and have an adverse impact on Southern Motion, the value of its assets and business, and its ability to reorganize.

11. Given this backdrop, it is essential to Southern Motion's estate, and consistent with the Bankruptcy Code, that Southern Motion be permitted to maintain and continue making all payments required under their Insurance Programs. It is similarly critical that Southern Motion has

the authority to supplement, place, amend, extend, renew, purchase or replace its Insurance Programs, as needed, in its business judgment, without further order of the Court.

## II. Payments Made to Maintain Insurance Programs are Ordinary Course Transactions Authorized by Section 363(c)(1) of the Bankruptcy Code

12. Payments made to maintain the Insurance Programs fall within the ordinary course of business, and such payments are therefore authorized under § 363(c)(1) of the Bankruptcy Code. Section 363(C)(1) of the Bankruptcy Code provides that, "unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of § 363(c)(1) is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 384 (2d Cir. 1997); *see also Chaney v. Off. Comm. of Unsecured Creditors of Crystal Apparel, Inc.* (*In re Crystal Apparel, Inc.*), 207 B.R. 406, 409 (S.D.N.Y. 1997).

13. Here, maintaining the Insurance Programs and honoring obligations arising thereunder, including undertaking renewals or extensions of the Insurance Policies as they expire, entering into new insurance arrangements is the type of ordinary course transactions contemplated by § 363(c)(1) of the Bankruptcy Code. Accordingly, § 363(c)(1) authorized continuation of the Insurance Programs in the ordinary course of business without the Court's approval.

## III. Maintenance of the Insurance Programs, Including Payment of the Insurance Obligations, is a Sound Exercise of Southern Motion's Business Judgment

14. To the extent maintaining the Insurance Programs, including, but not limited to, payment of the Insurance Obligations, would constitute a use of property of the estate outside the

ordinary course of business, maintaining the insurance Programs should be authorized as a sound exercise of Southern Motion's business judgment pursuant to § 363(b) of the Bankruptcy Code.

15. The Court may grant the relief requested herein pursuant to § 363(b) of the Bankruptcy Code which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g., Black v. Shor* (*In re BNP Petroleum Corp*.), 642 F. App'x 429, 435 (5th Cir. 2016) (noting that section 363 "requires that a sale of the estate's assets be supported by an articulated business justification, good business judgment, or sound business reasons") (internal quotation and citation omitted); *see also Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc*.), 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation omitted); *ASARCO, Inc. v. Elliot Mgmt.* (*In re ASARCO L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard . . . . The business judgment standard in section 363 is flexible and encourages discretion."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation omitted).

16. Southern Motion's sound business judgment supports maintaining the Insurance Programs, including paying the Insurance Obligations, whether arising pre-petition or post-petition, because the failure to maintain the Insurance Programs could result in: (i) the cancellation, or attempted cancellation of the Insurance Policies; (ii) Southern Motion's inability to obtain renewal or replacement of the Insurance Policies on terms that are as favorable as the current terms of such Insurance Policies; and (iii) violation of the Bankruptcy Code, applicable laws and regulations, various contractual commitments, and the fiduciary duties of Southern Motion as debtor-in-possession. Each of these outcomes would be detrimental to Southern Motion, its creditors, and its estates, and would unnecessarily jeopardize the success of Southern Motion's reorganization. All of these risks heavily outweigh the cost of maintaining the Insurance Programs.

17. Accordingly, Southern Motion should be authorized to maintain the insurance Programs, including payment of the Insurance Obligations, whether arising prepetition or post-petition, under § 363(b) of the Bankruptcy Code.

## IV. Maintenance of the Insurance Programs, Including Payment of the Insurance Obligations, is Authorized Under Sections 1107(A) and 1108 of the Bankruptcy Code

18. Southern Motion, operating its businesses as debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.* Moreover, as fiduciary for the bankruptcy estate, Southern Motion could be violating its fiduciary duties if it permitted any of the Insurance Policies to lapse by failing to maintain the Insurance Programs.

19. As discussed above, Southern Motion believes that the payments made to maintain the Insurance Programs, as well as the payments of any Insurance Obligations made in connection therewith, fall within the ordinary course of business and are therefore authorized pursuant to § 363(c)(1) of the Bankruptcy Code. To the extent any such action does not constitute an ordinary course transaction, Southern Motion requests that the Court authorize Southern Motion to continue payments for the Insurance Programs, as well as to pay the necessary prepetition amounts owed with respect thereto if any come to light post-petition, pursuant to §§ 363(b), 503(b), and 105(a) of the Bankruptcy Code.

20. The court in *CoServ* also noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id*. The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id*. at 498. That court provides a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id*.

21. Maintaining the Insurance Programs, including payment of the Insurance Obligations, whether arising prepetition or post-petition, satisfies each prong of the *CoServ* test. As described above, failing to maintain the Insurance Programs, including by failing to pay the Insurance Obligations, could result in cancellation of the Insurance Policies, in which case

Southern Motion would not only be in violation of various federal and state laws and regulations, and various contractual obligations, but may also be unable to find alternative insurance coverage or only find such alternatives at a much higher cost than Southern Motion currently incurs. Nonpayment of any of the Insurance Obligations could also render Southern Motion unable to renew the Insurance Policies and may render Southern Motion unable to obtain replacement therefore with respect to future period. Thus, the potential harms and economic disadvantages that would stem from the failure to maintain the Insurance Programs or to honor the Insurance Obligations are grossly disproportionate to the cost of maintaining the Insurance Programs and satisfying the Insurance Obligations. Finally, Southern Motion has assessed the alternatives to honoring the Insurance Obligations and has determined that no practical or legal alternative to payment of such obligations exists that would avoid significant disruption to Southern Motion's business operations.

22. In addition, the Court has authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for Southern Motion to carry out its duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see CoServ*, 273 B.R. at 491-93 & n.6 (holding that sections 105 and 1107 of the Bankruptcy Code provide authority for a debtor in possession to pay prepetition claims); *see also In re Tusa-Expo Holdings, Inc.*, Case No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr.

N.D. Tex. Nov. 7, 2008); *CEI Roofing*, 315 B.R. at 56. Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Accordingly, the Bankruptcy Code authorizes the postpetition payment of prepetition claims where, as here, such payments are critical to preserving the going-concern value of a debtor's estate.

23. Southern Motion's use of estate funds to pay the Insurance Obligations is justified because such obligations are necessary costs of preserving Southern Motion's estate. The Insurance Programs are essential to Southern Motion's operations, as Southern Motion would be exposed to significant liability if the Insurance Policies were allowed to lapse or terminate. Such exposure could detrimentally impact the success of the Chapter 11 Case.

24. Applicable law mandates that Southern Motion maintain workers' compensation coverage for its employees. Southern Motion's failure to pay its obligations under the workers' compensation policies could jeopardize its coverage and expose Southern Motion to significant liability in fines by government entities. In addition, the risk of eligible workers' compensations claimants would not receive timely payments for pre-petition or post-petition employment related injuries could negatively impact the financial well-being and morale of those claimants and, in turn, Southern Motion's entire employee base. This could result in employee departures, causing significant disruption in Southern Motion's business with a materially adverse impact on Southern Motion's operations, the value of the estate, and the interest of all parties in this Chapter 11 Case.

25. For the foregoing reasons: (i) payment of the obligations in connection with Insurance Programs is necessary, appropriate, and in the best interests of Southern Motion, its estate, and all other parties in interest in this Chapter 11 Case; and (ii) payment of the obligations

in connection with the Insurance Programs must be authorized to permit Southern Motion to satisfy its fiduciary duties as a debtor-in-possession under §§ 1107 and 1108 of the Bankruptcy Code. Southern Motion must be authorized not only to continue the Insurance Programs but also to pay the Insurance Obligations if doing so is necessary, in Southern Motion's judgment, to avoid cancellation or interruption of insurance coverage. Accordingly, the Court should authorize Southern Motion to maintain its Insurance Programs and to pay all obligations, including pre-petition obligations, related thereto.

**CAUSE EXISTS TO AUTHORIZE THE BANKS TO HONOR CHECKS AND ELECTRONIC FUNDS TRANSFERS**

26. Southern Motion further requests that the Court authorize applicable banks and other financial institutions (collectively, the "Banks") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by Southern Motion relating to the Insurance Obligations (whether such checks or fund transfers were presented before or after the Petition Date), to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payment. Southern Motion also seeks authority to issue new post-petition checks or effect new post-petition electronic funds transfers in replacement of any checks or fund transfer requests on account of prepetition Insurance Obligations dishonored or rejected as a result of the commencement of the Chapter 11 Case.

**WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

27. To implement the foregoing successfully, Southern Motion requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that Southern Motion has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**NOTICE**

28. Southern Motion will provide notice of this Motion to: (a) the Office of the united States Trustee for the Northern District of Mississippi; (b) the holders of the 20 largest unsecured claims against Southern Motion; (c) the United States Attorney's Office for the Northern District of Mississippi; the Internal Revenue Service; (d) the Mississippi Department of Revenue; (e) all other parties required by Local Rule 9013-1(g)(3); and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. Southern Motion submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

29. No prior request for the relief sought in this Motion has been made to this or any other court.

## RESERVATION OF RIGHTS

30. Nothing contained in this Motion or any actions taken by Southern Motion pursuant to relief granted is intended or should be construed as: (a) an admission as to the validity of any particular claim against Southern Motion; (b) a waiver of Southern Motion's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; or (e) a waiver or limitation of Southern Motion's rights under the Bankruptcy Code or any other applicable law.

WHEREFORE, Southern Motion respectfully requests that the Court enter an Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Respectfully submitted this the 31st day of August, 2026.

*_/s/ Evan Parrott_*
Evan N. Parrott

*Proposed Counsel to the Debtor*

**OF COUNSEL:**

**MAYNARD NEXSEN, P.C.**
Evan N. Parrott (MS Bar No. 104564)
William A. Knotts (MS Bar No. 106661)
11 North Water Street
RSA Battle House Tower
Suite 24290
Mobile, AL 36602
(251) 432-0001
eparrott@maynardnexsen.com
wknotts@maynardnexsen.com

*-and-*

Jayna Lamar (*pro hac application to be filed*)
Ryan D. Thompson (*pro hac application to be filed*)
Wesley R. Bulgarella (*pro hac application to be filed*)
Christian A. Pereyda (*pro hac application to be filed*)
1901 Sixth Avenue North
Suite 1700
Birmingham, Alabama 35203
(205) 254-1000
jlamar@maynardnexsen.com
rthompson@maynardnexsen.com
wbulgarella@maynardnexsen.com
cpereyda@maynardnexsen.com

*Proposed Counsel to the Debtor*

## CERTIFICATE OF SERVICE

I do hereby certify that on August 31, 2026, a true and correct copy of the foregoing was served by electronic transmission through the Court's CM/ECF system, which will send notification of such filing to all parties requesting electronic notice, including:

Sammye S. Tharp
OFFICE OF THE U.S. TRUSTEE
501 East Court Street
Suite 6-430
Jackson, MS 39201
601-965-4142
Sammye.s.tharp@usdoj.gov

/s/ *Evan N. Parrott*
Evan N. Parrott